FILED
CLERK
4:53 pm, Dec 10, 2018
U.S. DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
LONG ISLAND OFFICE

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
----------------------------------------------------------X
Waqas GONDAL,
(Immigration File #A 204-216-294),

                 Plaintiff,

      -against-

U.S. Department of Homeland Security, and Its Secretary Kirstjen Nielson, and Kristine R. Crandall, Acting Director of the U.S. Citizenship and Immigration Service Lincoln, Nebraska, Deferred Action for Childhood Arrival Application Processing,

                 Defendants.
----------------------------------------------------------X

**MEMORANDUM OF DECISION & ORDER**
2:18-cv-02322 (ADS)

**APPEARANCES:**

**Peter E. Torres**
*Counsel for the Plaintiff*
112 East 23rd Street
Brooklyn, NY 10010

**United States Attorney's Office for the Eastern District of New York**
*Counsel for the Defendants*
610 Federal Plaza
Central Islip, NY 11722
      By:    Robert B. Kambic, Assistant United States Attorney

**SPATT, District Judge**:

      Waqas Gondal ("Gondal" or the "Plaintiff") commenced this action against the United States Department of Homeland Security ("DHS"), DHS Secretary Kirstjen Nielsen, ("Nielsen"), and Acting Director of the United States Citizenship and Immigration Service in Lincoln, Nebraska Kristine R. Crandall ("Crandall") (together, the "Defendants") for failing to approve his

1

renewed Deferred Action for Childhood Arrivals ("DACA") application. The Plaintiff alleges that the Defendants' decision to deny his renewed DACA request violated his due process rights under the Fifth Amendment to the United States Constitution. He seeks a court order granting his DACA renewal application.

Presently before the Court is a motion by the Defendants, pursuant to Federal Rule of Civil Procedure ("FED. R. CIV. P." or "Rule") 12(b)(1) and 12(b)(6), seeking to dismiss the complaint for lack of subject matter jurisdiction and failure to state a claim upon which relief may be granted.

For the following reasons, the Defendants' motion to dismiss is granted.

## I. BACKGROUND

Unless otherwise noted, the following facts are drawn from the Plaintiff's complaint, and for the purposes of the instant motion, are construed in favor of the Plaintiff.

### A. DACA BACKGROUND

"'Deferred action' refers to an exercise of administrative discretion by the [United States Citizenship and Immigration Service ("USCIS")] under which [it] takes no action to proceed against an apparently deportable alien based on a prescribed set of factors generally related to humanitarian grounds." *Barahona-Gomez v. Reno*, 236 F.3d 1115, 1119 n.3 (9th Cir. 2001) (citing 6 C. Gordon, S. Mailman, & S. Yale–Loehr, Immigration Law and Procedure §§ 72.03 [2][a] & [2][h] (1998)); *accord Batalla Vidal v. Duke*, 295 F. Supp. 3d 127, 137 (E.D.N.Y. 2017) ("*Batalla Vidal I*") ("Deferred action, sometimes referred to as nonpriority status, is in effect, an informal administrative stay of deportation, by which immigration authorities decide not to initiate, or decide to halt, removal proceedings for humanitarian reasons or simply for … convenience[.]" (internal citations and quotation marks omitted)). As of 2014, there were approximately 11.3 million removable individuals living in the United States. DHS only has the capacity to remove

2

less than four percent of those eligible for removal per year. *Id*. at 136-37 (internal citations omitted).

On June 15, 2012, DHS issued a memorandum which set forth a Guidance policy that detailed the exercise of prosecutorial discretion to allow certain individuals who were brought to this country as children to remain in the country. Mem. from Janet Napolitano, Sec'y of DHS, to David V. Aguilar, Acting Comm'r, CBP, et al., Exercising Prosecutorial Discretion with Respect to Individuals Who Came to the United States as Children (June 15, 2012) (the "2012 Memo"). This policy is frequently referred to as DACA. Eligibility for deferred action is dependent on the individual demonstrating that he or she:

> (1) came to the United States under the age of 16, (2) has continuously resided in the United States for at least five years preceding the date of the memorandum (June 15, 2012) and is present in the United States on the date of the memorandum, (3) is currently in school, has graduated from high school, has obtained a general education development certificate, or is an honorably discharged veteran of the Coast Guard or Armed Forces of the United States, (4) has not been convicted of a felony offense, a significant misdemeanor offense, multiple misdemeanor offenses, or otherwise poses a threat to national security or public safety, and (5) is not above the age of 30.

Department of Homeland Security's Program of Deferred Action for Childhood Arrivals (DACA), 17 A.L.R. Fed. 3d Art. 3 (2016) (citing 2012 Memo). If approved, applicants are granted renewable two-year terms of deferred action. Decisions are granted on a "case by case basis." 2012 Memo at 2-3. However, the 2012 Memo warned that it "confer[red] no substantive right, immigration status or pathway to citizenship" and noted that the policy involved "the exercise of discretion within the framework of the existing law." 2012 Memo. Recipients are permitted to apply for employment authorization, which allows them to work legally and pay taxes amongst other things. 8 U.S.C. § 1324a(h)(3).

On September 5, 2017, after the arrival of the current presidential administration, the Acting Secretary of DHS, Elaine Duke, issued a memorandum which rescinded the 2012 Memo ("2017 Memo"). In pertinent part, the 2017 Memo stated:

> Taking into consideration the Supreme Court's and the Fifth Circuit's rulings in [*United States v. Texas*, --U.S.--, 136 S. Ct. 2271, 195 L. Ed. 2d 638 (2016)], and the September 4, 2017 letter from … Attorney General [Jeff Sessions], it is clear that the June 15, 2012 DACA program should be terminated. In the exercise of my authority in establishing national immigration policies and priorities, except for the purposes explicitly identified below, I hereby rescind the June 15, 2012 memorandum.

2017 Memo. Further, it ordered DHS to reject all applications received after September 5, 2017 as well as reject all renewal applications after October 5, 2017. *Id*. After the 2017 Memo was published, multiple lawsuits challenging the termination of DACA were filed. Since then, multiple preliminary injunctions have been issued and USCIS has resumed accepting requests to renew deferred action requests. For all intents and purposes, DACA continues to operate on the terms in place before it was rescinded by the 2017 Memo.

**B. GONDAL'S APPLICATION**

The Plaintiff was born in Pakistan on January 1, 1988. At some point prior to September 2012, Gondal entered the United States. In September 2012, Gondal applied for deferred action under DACA. Three months later, USCIS approved the Plaintiff's request and granted him deferred action for two years. In 2014, Gondal's deferred action renewal was granted for a three-year period.

In July 2015, Gondal applied for advance parole, an immigration document issued by USCIS which enables an alien to be paroled into the United States. USCIS granted the application and provided the Plaintiff with an advance parole document, which allowed him to take a trip to Pakistan in September 2015. Upon his return, Gondal was paroled into the United States.

4

On or about January 16, 2016, Gondal and a friend, Arshad Mohammad, departed the United States at the Niagara Falls Rainbow Bridge. He carried with him a false identification document with a birthdate of December 20, 1982. The Plaintiff was denied admission to Canada at the Canadian port of entry for presenting false documents. Gondal and his friend then returned to the United States port of entry and requested admission back into the United States. A search of his fingerprint records revealed that the birthdate listed on his fake identification document did not match the birthdate listed in his deferred action materials. During discussions with USCIS, Gondal indicated that he obtained the false document in order to seek a Canadian immigrant visa. The Plaintiff was not issued advance parole prior to that day. Despite this, Gondal was paroled into the United States. *See* 8 U.S.C. § 1182(d)(5)(A).

In September 2017, Gondal filed a DACA renewal request. On or about November 30, 2017, the Plaintiff received a Notice of Intent to Deny, which explained, in part:

> In order to be considered for a renewal of deferred action as a childhood arrival. you are to demonstrate that you have been residing continuously in the United States since the date you submitted your most recent, approved request for DACA until the date of filing your DACA renewal request. Continuous residence is disrupted if you traveled outside the United States on or after August 15. 2012 without advance parole. …
>
> According to information obtained during routine systems checks, it appears that you departed the United States on or about January 16, 2016.
>
> Your departure occurred on or after August 15, 2012. USCIS records do not show that you were issued advance parole for the period of time you were outside the United States. Therefore, you have not established that you may be considered for a renewal of deferred action under this process.
>
> Accordingly, USCIS intends to deny your request for consideration of a renewal of deferred action for childhood arrivals.

Dkt. 1-1 at 2-3. In response to this notice, the Plaintiff and Mohammed, his travel companion, submitted identical affidavits stating that they never left the United States and that the whole incident lasted half an hour. *Id*. at 4, 6.

On or about December 22, 2017, USCIS issued a decision stating that Gondal "ha[s] not demonstrated that [he] warrant[s] a favorable exercise of prosecutorial discretion and [that USCIS] will not defer action in [his] matter." *Id*. at 16.

The Plaintiff asserts that USCIS's decision violated his due process rights under the Fifth Amendment of the United States Constitution.

## II. DISCUSSION

### A. STANDARD OF REVIEW: FED. R. CIV. P. 12(B)(1)

"A case is properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it." *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000); *see also Aurecchione v. Schoolman Transp. Sys., Inc.*, 426 F.3d 635, 638 (2d Cir. 2005) ("After construing all ambiguities and drawing all inferences in a plaintiff's favor, a district court may properly dismiss a case for lack of subject matter jurisdiction under Rule 12(b)(1) if it lacks the statutory or constitutional power to adjudicate it." (internal citations and quotation marks omitted)). *See, e.g., Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94-95, 118 S. Ct. 1003, 140 L. Ed. 2d 210 (1998). "Under FED R. CIV. P. 12(b)(1), '[even] a facially sufficient complaint may be dismissed for lack of subject matter jurisdiction if the asserted basis for jurisdiction is not sufficient.'" *Frisone v. Pepsico Inc.*, 369 F. Supp. 2d 464, 469 (S.D.N.Y. 2005) (quoting *Peterson v. Cont'l Airlines Inc.*, 970 F. Supp. 246, 249 (S.D.N.Y. 1997)).

In its assessment of whether it has subject matter jurisdiction, the Court "need not accept as true contested jurisdictional allegations and may resolve disputed jurisdictional facts by reference to affidavits and other matters outside the pleadings." *Williams v. Runyon*, No. 97-Civ.-4029, 1999 WL 77207, at *1 (S.D.N.Y. Feb. 17, 1999) (quoting *Societe Nationale d'Exploitation Industrielle des Tabacs et Allumettes v. Salmon Bros. Int'l Ltd.*, 928 F. Supp. 398, 402 (S.D.N.Y. 1996)); *accord New York State Catholic Health Plan, Inc. v. Acad. O & P Assocs.*, 312 F.R.D. 278, 294 (E.D.N.Y. 2015) (citing *Phifer v. City of New York*, 289 F.3d 49, 55 (2d Cir. 2002)); *Makarova*, 201 F.3d at 113 (citing *Kamen v. Am. Tel. & Tel. Co.*, 791 F.2d 1006, 1011 (2d Cir. 1986)). All uncontroverted factual allegations contained in the complaint are accepted as true and the Court draws all reasonable inferences in favor of the party asserting jurisdiction. *See Tandon v. Captain's Cove Marina of Bridgeport, Inc.*, 752 F.3d 239, 243 (2d Cir. 2014); *accord Morrison v. Nat'l Australia Bank Ltd.*, 547 F.3d 167, 170 (2d Cir. 2008).

There are two types of procedural challenges to subject matter jurisdiction under Rule 12(b)(1): (1) facial; or (2) fact-based.

A facial challenge is based exclusively on the complaint's factual allegations or exhibits attached to the complaint. There, the plaintiff does not have an evidentiary burden, *see Amidax Trading Grp. v. S.W.I.F.T. SCRL*, 671 F.3d 140, 145 (2d Cir. 2011), and the district court must evaluate whether the complaint and its exhibits "allege facts that affirmatively and plausibly suggest that [the plaintiff] has standing to sue." *Id.*; *see, e.g.*, *Selevan v. New York Thruway Auth.*, 584 F.3d 82, 88 (2d Cir. 2009). *See also Warth v. Seldin*, 422 U.S. 490, 501, 95 S. Ct. 2197, 45 L. Ed. 2d 343 (1975) ("For purposes of ruling on a motion to dismiss for want of standing, both the trial and reviewing courts must accept as true all material allegations of the complaint, and must construe the complaint in favor of the complaining party.").

In a fact-based challenge, a defendant must proffer evidence beyond what is alleged in or attached to the complaint. *See, e.g.*, *Robinson v. Gov't of Malaysia*, 269 F.3d 133, 140 n.6 (2d Cir. 2001). "[I[f the affidavits submitted on a [fact-based] 12(b)(1) motion … reveal the existence of factual problems" related to jurisdiction, the plaintiff must present evidence of his own to counter the defendant's evidence. *Exch. Nat'l Bank of Chicago v. Touche Ross & Co.*, 544 F.2d 1126, 1131 (2d Cir. 1976). There, "the party asserting subject matter jurisdiction 'has the burden of proving by a preponderance of the evidence that it exists.'" *Tandon*, 752 F.3d at 243 (quoting *Makarova*, 201 F.3d at 113). If a plaintiff's allegations and exhibits are sufficiently plausible and the evidence presented by the defendant(s) does not contradict such allegations, the plaintiff does not have to present additional evidence and can rely on the pleadings.

## B. STANDARD OF REVIEW: FED. R. CIV. P. 12(B)(6)

In considering a motion to dismiss pursuant to Rule 12(b)(6), the Court must accept the factual allegations set forth in the complaint as true and draw all reasonable inferences in favor of the Plaintiff. *See, e.g.*, *Trs. of Upstate N.Y. Eng'rs Pension Fund v. Ivy Asset Mgmt.*, 843 F.3d 561, 566 (2d Cir. 2016); *Walker v. Schult*, 717 F.3d 119, 124 (2d Cir. 2013); *Cleveland v. Caplaw Enters.*, 448 F.3d 518, 521 (2d Cir. 2006); *Bold Elec., Inc. v. City of New York*, 53 F.3d 465, 469 (2d Cir. 1995); *Reed v. Garden City Union Free Sch. Dist.*, 987 F. Supp. 2d 260, 263 (E.D.N.Y. 2013).

Under the *Twombly* standard, the Court may only dismiss a complaint if it does not contain enough allegations of fact to state a claim for relief that is "plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007). The Second Circuit has expounded that, after *Twombly,* the Court's inquiry under Rule 12(b)(6) is guided by two principles:

> First, although a court must accept as true all of the allegations contained in a complaint, that tenet is inapplicable to legal conclusions, and [t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice. Second, only a complaint that states a plausible claim for relief survives a motion to dismiss and [d]etermining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.

*Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 664, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009)).

A complaint must include "a short and plain statement of the claim showing that the pleader is entitled to relief," in order to survive a motion to dismiss. FED. R. CIV. P. 8(a)(2). Under Rule 8, a complaint is not required to allege "detailed factual allegations." *Kendall v. Caliber Home Loans, Inc.*, 198 F. Supp. 3d 168, 170 (E.D.N.Y. 2016) (quoting *Twombly*, 550 U.S. at 555). "In ruling on a motion pursuant to FED. R. CIV. P. 12(b)(6), the duty of a court 'is merely to assess the legal feasibility of the complaint, not to assay the weight of the evidence which might be offered in support thereof.'" *DiFolco v. MSNBC Cable L.L.C.*, 622 F.3d 104, 113 (2d Cir. 2010) (quoting *Cooper v. Parsky*, 140 F.3d 433, 440 (2d Cir. 1998)). The Court "[is] not bound to accept as true a legal conclusion couched as a factual allegation." *Twombly*, 550 U.S. at 555.

## C. AS TO SUBJECT MATTER JURISDICTION

The Defendants argue that 8 U.S.C. § 1252(g) divests the Court of jurisdiction in this matter. *See United States v. Armstrong*, 517 U.S. 456, 464, 116 S. Ct. 1480, 134 L. Ed. 2d 687 (1996); *Reno v. Am.-Arab Anti-Discrimination Comm.*, 525 U.S. 471, 485, 119 S. Ct. 936, 142 L. Ed. 2d 940 (1999) ("*AAADC*"). Section 1252(g) states, in pertinent part:

> Except as provided in this section and notwithstanding any other provision of law (statutory or nonstatutory) ... no court shall have jurisdiction to hear any cause or claim by or on behalf of any alien arising from the decision or action by the Attorney General to commence proceedings, adjudicate cases, or execute removal orders against any alien under this chapter.

9

8 U.S.C. § 1252(g). "[This] provision applies only to three discrete actions that the Attorney General may take: [the] 'decision or action' to 'commence proceedings, adjudicate cases, or execute removal orders.'" *AAADC*, 525 U.S. at 482; *accord Vasquez v. Aviles*, 639 F. App'x 898, 901 (3d Cir. 2016); *Botezatu v. INS*, 195 F.3d 311, 313 (7th Cir. 1999). As Justice Scalia noted in *AAADC*:

> Section 1252(g) seems clearly designed to give some measure of protection to "no deferred action" decisions and similar discretionary determinations, providing that if they are reviewable at all, they at least will not be made the bases of separate rounds of judicial intervention outside the streamlined process that Congress has designed.

525 U.S. at 485. However, the majority rejected the notion that "§ 1252(g) covers the universe of deportation claims—that it is a sort of 'zipper' clause that says 'no judicial review in deportation cases unless this section provides judicial review.'" *AAADC*, 525 U.S. at 482 (citing 8 U.S.C. § 1252(g)).

In the instant case, the Plaintiff asserts a procedural due process claim with a peculiar prayer for relief. Gondal requests that this Court "[o]rder USCIS to process [his] DACA application and issue him employment authorization during the course of this litigation[.]" Compl. at 7. As USCIS has already processed and denied his deferral request and Gondal does not specify any procedural deficiencies, it appears that the Plaintiff requests that his application be granted, rather than simply re-processed with additional or modified procedural protections.

This is not the appropriate forum to challenge the merits of USCIS's decision to deny a renewal of deferred action. In *AAADC*, the Supreme Court unquestionably determined that § 1252 applies to "'no deferred action' decisions and similar discretionary determinations." *AAADC*, 525 U.S. at 944. The statute precludes judicial determination of DACA eligibility and excludes review of deferred action from the jurisdiction of this Court. *See* 8 U.S.C. § 1252(g); *AAADC*, 525 U.S.

at 944; *Regents of the Univ. of California v. U.S. Dep't of Homeland Sec.*, 908 F.3d 476, 504 (9th Cir. 2018) (noting that "challenges to individual 'no deferred action' decisions … fall exactly within Section 1252(g) as interpreted by the Court in [*AAADC*]"); *Rodriguez v. Sessions*, 677 F. App'x 447, 447 (9th Cir. 2017) ("We lack jurisdiction to consider [the plaintiff's] eligibility for [DACA]."); *Vasquez*, 639 F. App'x at 901 ("[8 U.S.C. § 1252(g)] deprives all courts of jurisdiction to review a denial of DACA relief because that decision involves the exercise of prosecutorial discretion not to grant a deferred action."); *Fabian-Lopez v. Holder*, 540 F. App'x 760, 761 (9th Cir. 2013) ("We lack jurisdiction to consider whether [the plaintiff] is eligible for consideration for [DACA]." (citing 8 U.S.C. § 1252(g))); *Gasparian v. Holder*, 700 F.3d 611, 614 (1st Cir. 2012) (holding that "[8 U.S.C. § 1252(g)] do[es] not confer jurisdiction on this court to review acts of prosecutorial discretion").

Yet, the Plaintiff's procedural due process challenge, which arises from a deferred action is not foreclosed by 8 U.S.C. § 1252(g). Section 1252 does not apply to any conceivable deportation-related claim but instead only impedes jurisdiction in cases involving a "decision or action … to commence proceedings, adjudicate cases, or execute removal orders." 8 U.S.C. § 1252(g). A procedural due process claim challenges the non-discretionary process by which DACA statuses are decided, not the decision to grant or deny deferred action. The process itself, which occurs prior to USCIS's discretionary decision on deferred action is a "purely legal question[] that do[es] not implicate agency discretion." *Perez v. U.S. Bureau of Citizenship & Immigration Servs. (USCIS)*, 774 F.3d 960, 965 (11th Cir. 2014).

8 U.S.C. § 1252(g) does not deprive this Court of jurisdiction to hear and adjudicate procedural due process claims challenging USCIS procedure prior to its discretionary decision. *See Coyotl v. Kelly*, 261 F. Supp. 3d 1328, 1340 (N.D. Ga. 2017) ("[T]he Court is not deprived of

11

jurisdiction by § 1252(g) to consider whether [the agencies] followed their own procedures in denying Plaintiff's application for DACA renewal or terminating her DACA status.").

Accordingly, although the Court lacks subject matter jurisdiction to award the requested relief, it will consider the merits of the Plaintiff's procedural due process challenge.

D. AS TO THE PROCEDURAL DUE PROCESS CLAIM

The Plaintiff argues that he has a property interest in his employment authorization card and a liberty interest in "being approved" under DACA. The Defendants counter that the denial of Gondal's DACA request does not deprive him of a cognizable liberty or property interest.

"A procedural due process claim is composed of two elements: (1) the existence of a property or liberty interest that was deprived and (2) deprivation of that interest without due process." *Bryant v. New York State Educ. Dep't*, 692 F.3d 202, 218 (2d Cir. 2012). At a fundamental level, procedural due process ensures that "[p]arties whose rights are to be affected are entitled to be heard; and in order that they may enjoy that right they must be notified." *Baldwin v. Hale*, 68 U.S. 223, 233, 17 L. Ed. 531 (1863). "Liberty interests include physical restraint, a substantial infringement of a fundamental right, harm to one's reputation affecting another tangible interest, or the unjustified intrusion of one's personal security. Property interests include real property, personal property, intellectual property, or any legitimate claim of entitlement." *Casa De Maryland v. U.S. Dep't of Homeland Sec.*, 284 F. Supp. 3d 758, 776 (D. Md. 2018) (internal citations omitted).

Defendants focus on the first element, arguing that the decision to grant deferred action and work authorization is discretionary, and therefore, there cannot be a constitutionally protected liberty or property interest. "[O]nly benefits to which a person has a 'legitimate claim of entitlement' can support a constitutionally protected liberty or property interest." *Batalla Vidal v.*

12

*Nielsen*, 291 F. Supp. 3d 260, 283-84 (E.D.N.Y. 2018) ("*Batalla Vidal II*") (internal citations omitted); *Looney v. Black*, 702 F.3d 701, 706 (2d Cir. 2012) ("A 'unilateral expectation' is not sufficient to establish a constitutionally protected … right[,] [r]ather, a plaintiff must have 'a legitimate claim of entitlement to' the alleged property interest." (quoting *Bd. of Regents of State Colls. v. Roth*, 408 U.S. 564, 576-77, 92 S. Ct. 2701, 33 L. Ed. 2d 548 (1972))).

The decision to grant deferred action and work authorization is a discretionary one. "In determining whether a given benefits regime creates a legitimate claim of entitlement to such benefits, we ask whether the statutes and regulations governing the distribution of benefits meaningfully channel official discretion by mandating a defined administrative outcome." *Batalla Vidal II*, 291 F. Supp. 3d at 284 (quoting *Barrows v. Burwell*, 777 F.3d 106, 113 (2d Cir. 2015)).

The 2012 Memo explicitly denies the creation of any entitlement:

> This memorandum confers no substantive right, immigration status or pathway to citizenship. Only the Congress, acting through its legislative authority, can confer these rights. It remains for the executive branch, however, to set forth policy for the exercise of discretion within the framework of the existing law. I have done so here.

2012 Memo. While an agency's self-imposed labeling is not determinative of what does or does not constitute an entitlement, the use of prosecutorial discretion does not typically generate substantive rights. *See Casa De Maryland*, 284 F. Supp. 3d at 776 ("While entitlements are not always self-labeled or created with bright flashing lights, the exercise or restraint of prosecutorial discretion is not traditionally the sort of governmental action that creates substantive rights.").

The 2012 Memo does establish criteria that "should be satisfied before an individual is considered," 2012 Memo at 1; however, there is no guarantee that meeting those conditions mandates a particular result. As the memo describes, the decision to grant or deny deferral is entirely a matter of agency discretion. Although, as Gondal points out, the decision to deny a DACA request does impact other potential liberty or property interests, any benefit he or other

DACA recipients receive arise from the decision to grant deferred action. If the Plaintiff is not entitled to the receipt of renewed deferred action, he is not entitled to any additional interests that are contingent on such a decision. *See Batalla Vidal II*, 291 F. Supp. 3d at 284.

Accordingly, the Plaintiff does not possess a liberty or property interest in a particular decision under DACA nor an employment authorization card.

Even if liberty or property interests were at stake, Gondal failed to allege that the procedure USCIS followed was constitutionally insufficient. As the Defendants argue in their papers, the complaint fails to allege any facts that plausibly suggest that USCIS failed to afford him a constitutionally sufficient process. *See Bryant*, 692 F.3d at 218.

To the extent that Gondal seeks deferred action, this Court is unable to grant such relief. It would be inappropriate given the nature of his only cause of action. A procedural due process claim does not guarantee a particular result; it protects against procedural unfairness. *McDonald v. Bd. of Educ. of City of New York*, No. 01 Civ 1991, 2001 WL 840254, at *4 (S.D.N.Y. July 25, 2001) ("Every due process inquiry must begin with the recognition that '[due process] guarantees no particular form of procedure; it protects substantive rights." (quoting *Nat'l Labor Relations Bd. v. Mackay Radio & Tel. Co.*, 304 U.S. 333, 351, 58 S. Ct. 904, 82 L. Ed. 1381 (1938))). Therefore, even if the Plaintiff has alleged the rest of a procedural due process claim, he fails to request proper relief.

Further, the only potential procedural deficiency the Plaintiff cites with respect to his deferred action is the failure of USCIS to provide him with sufficient explanation. However, he fails to identify any procedure that USCIS failed to follow that violated the Fifth Amendment. The Plaintiff's pleading fails to plausibly suggest that the due process clause was violated by USCIS's current procedure. Further, the record reflects the opposite. The Plaintiff received a letter

14

informing him of the reasons for the denial and allowed him to respond. Gondal sent USCIS additional documentation regarding the incident at the Canadian border, including sworn statements by those involved. He has not articulated any basis for this Court to find that a DACA recipient is entitled to more than notice of failure to renew a deferral and an opportunity to meaningfully respond to that notice prior to the revocation of deferred action status.

Accordingly, the Plaintiff's Fifth Amendment procedural due process claim fails.

### E. AS TO THE ADMINISTRATIVE PROCEDURES ACT CLAIM

Finally, the Plaintiff attempts to amend his complaint by adding a claim under the Administrative Procedures Act, 5 U.S.C. § 701 *et seq*. ("APA") through his motion papers.

While the Plaintiff references the APA in his jurisdictional statement, the complaint is devoid of any other mention of an APA cause of action. Without even conclusory statements reciting the bare elements of a potential claim, even in the light most favorable to the Plaintiff, the Court is unable to conclude that Gondal asserts an APA claim in his complaint.

In his opposition memorandum, the Plaintiff devotes a portion of his brief to an argument concerning purported APA claims. The Court notes that this is procedurally improper and refuses to construe such a claim as an attempt to amend his complaint. At no point in his motion papers did Gondal request permission from the Court to amend his Complaint to add an APA cause of action. Yet, even if he did make such a request, "a party is not entitled to amend its complaint through statements made in motion papers[.]" *Soules v. Connecticut, Dep't of Emergency Servs. & Pub. Prot.*, 882 F.3d 52, 56 (2d Cir. 2018) (quoting *Wright v. Ernst & Young LLP*, 152 F.3d 169, 178 (2d Cir. 1998)); *accord Desmarat v. Artus*, No. 9:08-CV-977, 2011 WL 1564605, at *3 (N.D.N.Y. Mar. 25, 2011) (collecting cases). Accordingly, the Plaintiff has failed to assert an APA claim in his complaint and is unable to do so in his motion papers.

## III. CONCLUSION

For the reasons stated above, the Defendants' motion to dismiss the Plaintiff's complaint is granted and Gondal's complaint is dismissed with prejudice. The Clerk of the Court is respectfully directed to close the case.

It is **SO ORDERED**:

Dated: Central Islip, New York

December 10, 2018

<u>/s/ Arthur D. Spatt</u>

ARTHUR D. SPATT

United States District Judge